IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| United States of America, ) | CR 09-0146-TUC-FRZ(HCE) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) |  |
| Julio Ochoa-Mata, ) |  |
| Defendant. ) |  |

Defendant Julio Ochoa-Mata filed a Motion To Dismiss Indictment For Selective Prosecution Or, Alternatively, For Discovery Under Rule 16 (hereinafter "Motion p._"). (Doc. No. 18). Defendant's Motion came on for hearing on March 30, 2009.

For the reasons stated herein the Magistrate Judge recommends that the District Court deny Defendant's Motion To Dismiss Indictment For Selective Prosecution, Or, Alternatively, For Discovery Under Rule 16.

**I. CHARGES**

Defendant Julio Ochoa-Mata is charged in one count of a two count indictment[1] with having been convicted of a crime punishable by imprisonment of a term exceeding one year,

---

[1] Co-Defendant Silvestre Cervantes-Contreras is charged in Count 2 with being in the United States illegally and in possession of ammunition in violation of 18 U.S.C. §§922(g)(5)(A) and 924(a)(2).

1 i.e., "Possession of Psuedoephedrine [sic] with Intent to Manufacture Methamphetamine, in
2 case number F055909068-9, in the Superior Court of California, County of Fresno, on
3 February 22, 2006..." and knowingly possessing ammunition, that is, 500 rounds of Aguila
4 .380 caliber ammunition, said ammunition being in and affecting interstate commerce in that
5 it was previously shipped and transported into the State of Arizona from another state or
6 foreign country, in violation of Title 18, United States Code, Sections 922(g)(1) and
7 924(a)(2). (Doc No. 6).

## II. PROCEDURAL HISTORY

9 Defendant's Motion To Dismiss Indictment For Selective Prosecution Or,
10 Alternatively, For Discovery Under Rule 16 came on for hearing on March 30, 2009. At the
11 hearing no witnesses testified; no documents were introduced into evidence: and no
12 stipulations were entered into between Defendant and the Government.

## III. FACTUAL BACKGROUND

14 On January 10, 2009, Defendant was observed purchasing ammunition from a gun
15 dealer at a local gun show. (Indictment p.1; Government's Response To Defendant's Motion
16 To Dismiss The Indictment For Selective Prosecution pp.2-3 (hereinafter "Response p._")).
17 Defendant opines that the Bureau of Alcohol, Tobacco, Firearms and Explosives "arrests
18 *numerous* Mexicans in Tucson every year at gun shows. Agents of the ATF *typically* wander
19 the gun shows in an undercover capacity and observe people *they believe* to be Mexicans
20 illegally in the country, or on nonimmigrant visa status, and arrest them if *they believe* they
21 purchase weapons through, for example, a straw party." (Motion pp. 1-2)(emphasis added).
22 In Defendant's case, an undercover Immigration and Customs officer observed two Hispanic
23 males, Defendant and Co-Defendant Silvestre Cervantes-Contreras, along with a Hispanic
24 female browsing weapons and ammunition at a gun show. They were later observed at a
25 booth and heard speaking in Spanish to the booth vendor about purchasing ammunition.
26 (Response p. 3). Defendant and Co-Defendant were observed producing a large amount of
27 U.S. currency from their pockets. (*Id.*) Defendant purchased a case of .380 caliber
28 ammunition and Co-Defendant purchased a half case of .38 Super ammunition. (*Id.*).

1 Defendant and Co-Defendant then went to the parking lot, entered a grey sedan and drove
2 away. (*Id.*).

3 An Arizona Department of Public Safety officer stopped the vehicle, driven by Co-
4 Defendant with Defendant as passenger, after observing that the vehicle did not stop at a stop
5 sign. (*Id.*) The officer determined that both Defendant and Co-Defendant had no legal
6 authority to be in the United States. (*Id.* at pp.3-4). Defendant was taken into custody and
7 later fingerprinted. (*Id.* at p. 4). Defendant's fingerprints were determined to match the prints
8 of an individual identified as Luis Lopez aka Raphael Cardenas. Luis Lopez was determined
9 to have been convicted of Possession of "Psuedoephedrine [sic] with the Intent to
10 Manufacture Methamphetamine, a felony..." punishable by imprisonment for a term
11 exceeding one year in California and was also a fugitive escapee from California. (*Id.* at pp.
12 2, 4).

13 **IV. DISCUSSION**

14 **A. Whether Defendant was Selectively Prosecuted Because of His Ethnicity**

15 Defendant alleges that: (1) gun dealers, who are overwhelmingly white, as never being
16 prosecuted for selling firearms or ammunition to one illegally in the United States; and (2)
17 he inquired of the booth vendor and was informed by same that no identification establishing
18 his authorization to be in the United States was necessary. (Motion p. 2).

19 To succeed on a claim of selective prosecution, a defendant has the burden of
20 establishing: (1) others similarly situated have not been prosecuted; and (2) the selective
21 prosecution of a defendant was based on an impermissible motive. *United States v. Wayte,*
22 710 F.2d 1385, 1387 (9th Cir. 1983) *affirmed* 470 U.S. 598 (1985); *United States v. Wilson,*
23 639 F.2d 500, 503-04 (9th Cir. 1981).

24 **1. Similarly Situated**

25 Defendant opines that the similarly situated group that is not being prosecuted are the
26 white gun dealers who "are presumably aware that it is [] illegal to sell ammunition to illegal
27 aliens." (Motion pp. 2-3). Defendant's effort to align and analogize his situation to white gun
28 dealers is untenable. Defendant is a prohibited possessor by virtue of his felony conviction,

- 3 -

1  his fugitive status, and/or his illegal status in the United States, while the gun dealer is not.
2  It is unlawful for a gun dealer to sell ammunition to another *knowing or having reasonable*
3  *cause to believe* that the purchaser is an alien illegally in the United States. *See* 18 U.S.C.
4  §922(d)(5)(A). It is unlawful for a person who: (1) *has been convicted of a felony* punishable
5  by imprisonment for a term exceeding one year; or (2) *is a fugitive from justice*; or (3) *is*
6  *illegally in the United States*, to possess ammunition. *See* 18 U.S.C. §922(g)(1),(2), and
7  (5)(A). This Court reasonably presumes that Defendant was aware of his status as to any one,
8  some, or all three.

9  The correct similarly situated group that Defendant must compare himself to would
10 be Caucasians illegally in the United States or Caucasian convicted felons, either of whose
11 alienage is other than Mexican, who the Government does not prosecute for possession of
12 ammunition. Thus, the similarly situated group and Defendant would be the same in all
13 relevant respects except for ethnicity. *See United States v. Aguilar*, 883 F.2d 662, 706 (9th
14 Cir. 1989), *superseded by statute on other grounds as stated in United States v. Gonzalez-*
15 *Torres,* 309 F.3d 594, 599 (9th Cir. 2002). Defendant fails to make an initial and adequate
16 *prima facie* showing of such. *United States v. Ness*, 652 F.2d 890, 892 (9th Cir. 1981).

17 **2. Impermissible Motive**

18 Defendant merely suggests that his ethnicity alone was the impermissible motive for
19 the Government's prosecution of him. Defendant ignores observations of him and the Co-
20 Defendant that drew heightened scrutiny from the Immigration and Customs undercover
21 agent: browsing firearms and ammunition and later producing a large amount of cash to
22 purchase a case and a half of ammunition. Moreover, when later stopped by a Department
23 of Public Safety officer for a traffic violation, Defendant and Co-Defendant both freely
24 admitted to being in the United States illegally. (Response pp. 3-4). Further investigation
25 revealed Defendant to be a prohibited possessor by virtue of a prior felony conviction for
26 which he was indicted in the instant case.

27 Defendant has made no showing of discriminatory policies underlying the selection
28 of his case for prosecution. Possession of ammunition by a prohibited possessor, regardless

of ethnicity, is not a protected group. Courts are properly reluctant to examine the Government's decision to prosecute a case. *Wayte v. United States*, 470 U.S. 598, 608 (1985).

> Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

*Id.* at 607.

### B. Discovery

Defendant moves that the Court, alternative to dismissal, order the Government "to produce statistics verifying [D]efendant's claims that only Mexicans are prosecuted for this offense, not white gun dealers." (Motion p. 3). Defendant has made no showing that the data sought is material to preparing his defense; or that the Government intends to use such data in its case-in-chief; or that the data was obtained from or belongs to Defendant. Fed.R.Crim.P. 16(a)(1) (E)(i)-(iii).   Except as provided in Rule 16(a)(1), discovery of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case is not discoverable. Fed.R.Crim.P. 16(a)(2).

> [T]o obtain discovery on a selective prosecution claim, a defendant must present specific facts, *not mere allegations*, which establish a colorable basis for the existence of both discriminatory application of a law and discriminatory intent on the part of government actors. This is a high threshold. As has been true historically, it will be the rare defendant who presents a sufficiently strong case of selective prosecution to merit discovery of government documents.

*United States v. Bourgeois*, 964 F.2d 935, 939 (9th Cir. 1992) (emphasis added).This high threshold recognizes two distinct policy considerations: "First, courts are ill equipped to assess a prosecutor's charging decisions", *Id.* (citing *Wayte,* 470 U.S. at 607); and "[s]econd, court oversight of prosecutorial decisions could undermine effective law enforcement." *Id.* (citing  *Wayte,* 470 U.S. at 607).

Herein, Defendant has made no showing that the Government does not prosecute Caucasians illegally in the United States or Caucasian convicted felons, either of whose alienage is other than Mexican, who possess ammunition. The claim, without more, by Defendant's counsel that the demographics of the District dictates that Mexicans are selectively prosecuted does not suggest that prosecution decisions were based on ethnicity so as to compel discovery.

> The government need not provide discovery on a selective prosecution claim simply because law enforcement officials focused for a short time on a racially homogeneous criminal group.

*Bourgeois,* 964 F.2d at 940-41. It is well-established that in order to merit discovery on a selective prosecution claim, Defendant must first identify *specific facts* that establish a "colorable" basis for both elements of the claim. *Bourgeois,* 964 F.2d at 938 (citing *United States v. Balk,* 706 F.2d 1056, 1060 (9th Cir. 1983)). Defendant has failed in this regard.

## V. CONCLUSION

Defendant has failed to make a *prima facie* showing that the Government has declined to prosecute other similarly situated, non-Mexican Caucasian felons illegally in possession of ammunition. Defendant has failed to make a *prima facie* showing that the Government selectively prosecuted Defendant for impermissible motives. Defendant, having failed as to both elements of selective prosecution, is not entitled to discovery.

## VI. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court deny Defendant's Motion To Dismiss Indictment For Selective Prosecution, Or Alternatively, For Discovery Under Rule 16 (Doc. No. 18).

Pursuant to 28 U.S.C. §636(b) and Rule 59 of the Federal Rules of Criminal Procedure, any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **CR 09-0146-TUC-FRZ.**

Failure to file objections in accordance with Fed.R.Cr.P. 59 will result in waiver of the right to review.

DATED this 1st day of April, 2009.

_____
Héctor C. Estrada
United States Magistrate Judge

- 7 -